**UNITED STATES of America, Plaintiff,**

v.

**Raymond W. ZWEGO, Jr., et al., Defendants.**

**No. 07–0007–CR–W–HFS.**

United States District Court, W.D. Missouri, Western Division.

Feb. 16, 2007.

Linda Parker Marshall, United States Attorney's Office, Kansas City, MO, for Plaintiff.

Curtis E. Woods, Kansas City, MO, for Defendants.

## ORDER

SACHS, District Judge.

Defendant Shields has filed a motion for "public disclosure of the Government's discovery" in advance of the primary election on February 27 in which she is a candidate for Mayor of Kansas City. She contends that the voting public is entitled to information showing the nature and scope of the available proof supporting an indictment against her. She is one of eleven defendants in a prosecution for allegedly attempting to defraud a prospective mortgage lender to the nominal purchasers of a residence owned by her husband and herself. The Government contends that the lender was fraudulently led to believe the

sales price and reasonable appraised value of the house was $1,200,000, whereas Ms. Shields and her husband were willing to sell for, and were to receive, some $707,000.

I take judicial notice from prior publicity that Ms. Shields did not sign a sales contract, although a forged document was supplied to the lender, showing a price of $1,200,000. The Government contends, however, that she willfully joined in misrepresenting the price in the settlement agreement signed at closing.[1] Based on discovery provided by the Government on January 26 and 30, 2007, Ms. Shields contends that only one document used at closing "relates in any way to the sales price of the house." This presumably refers to the settlement agreement already publicly described. Ms. Shields contends that the Government has disclosed in discovery that in addition to some 727 pages of documents it has 21 compact discs, recording "conversations of several defendants, not including Shields" or her husband.

The motion is not supported by case-law, but Ms. Shields has contended that, since she was headlined in a Government press release on the day of the indictment, fairness dictates, and the public is entitled to know, all evidence already disclosed to the parties and currently expected to be used to establish the Government's case. In a reply brief she offers to narrow the request.

The original press release, dated January 4, 2007, announced in the first sentence that "a former Jackson County, Mo., official and her husband were among those indicted ... today for conspiracy and wire fraud for their role in a scheme to engage in mortgage fraud." The United States Attorney was quoted as saying the case "represents another tragic example of intelligent individuals, including lawyers and prominent elected officials—thumbing their noses at the law." The release identifies Ms. Shields as the public official and her husband as a lawyer.

The press release asserts that Ms. Shields, at closing, "signed all the documents, including the settlement agreement falsely stating that the purchase price of the home was $1.2 million." In another portion of the document it states, as noted at the press conference, that the agreement also refers to deduction of a so-called "management fee" before the sellers were paid, thus arguably documenting the true value they placed on the house—that is, the minimum sum that would induce them to sell the house.

The release adds that the United States Attorney "cautioned that the charges contained in the indictment are simply accusations, and not evidence of guilt. Evidence supporting the charges must be presented to a federal trial jury, whose duty is to determine guilt or innocence." Despite the disclaimer, the press release clearly expresses the personal view of the United States Attorney that Ms. Shields and her husband are "tragic examples" of guilty individuals in prominent positions. The prosecutor's language invites a response, unless the defendants are inhibited by legal rules not applicable to the Government.

Public denials of guilt have occurred, as well as bitter complaints by Ms. Shields and her husband. The Government's filing in opposition to the motion contains some of the details. Although the parties debate the propriety of the public statements already made, the issue presented by the

---

1. At a press conference held in connection with the indictment, the United States Attorney said the settlement agreement falsely reported the purchase price as $1.2 million. He also said the same document disclosed that the sellers were only to receive sums remaining after a "management fee" of $414,580 was paid to defendant Zwego. The text of the transcript is attached to the Government's response to the motion (Doc. 57).

motion is narrower—that is whether there should be public disclosure of discovery materials supplied to all the defendants by the Government on January 26 and 30, pursuant to normal pretrial processing of litigation by the Magistrate Judge.

The Government argues that disclosures were made for the assistance of the lawyers in preparing for trial, that a confidentiality agreement was signed by counsel for Ms. Shields, and that the confidentiality of these materials should be maintained. The Government further contends that disclosure and further public debate would endanger jury selection and would be contrary to the standard pretrial rules of this court (particularly Local Rule 99.7) and of ethical rules applicable to Missouri lawyers engaged in litigation. Without seeking sanctions for past public discussion, and without seeking a "gag order" applicable to both sides, the Government does urge me to direct defense counsel (and defendant lawyers) to follow the restrictions imposed by Local Rule 99.7.

Except for the Government's initial press conference, which occurred before Ms. Shields filed for mayor, the current controversy relates almost entirely to the primary election. One may suppose that some voters will be influenced in their choice by suppositions about the pending criminal charges against Ms. Shields, and she must deal with the charges as a campaign issue. The Government concedes she is "free to make ridiculous public comments" but must nevertheless refrain from "trying" the merits by reviewing the likely evidence. The right of Ms. Shields to criticize the Government's case in her own way cannot be so neatly cabined, at least during an election campaign more than three months before jury selection.

There is little legal authority cited by the parties that offers guidance in this context, where there is potential conflict between electioneering rights and the administration of justice. The Government relies on the dissent in *Wood v. Georgia*, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962) where the majority ruled that a sheriff could not be punished for interference with grand jury proceedings during an election contest, when he publicly criticized the impanelment of a grand jury to pursue a racially-charged investigation. The Government prefers the dissenting opinion of Justice Harlan, but neglects his statement that, unlike the present situation, "there was ample opportunity to bring the judges' performance to the voters after the investigation was closed." 370 U.S. at 404, 82 S.Ct. 1364. Like the Government, however, I am attracted to the Harlan view that where there are conflicts between First Amendment rights and "the right to an impartial judicial proceeding, an accommodation must be made to preserve the essence of both." 370 U.S. at 396, 82 S.Ct. 1364. In the present case, in my judgment, that means taking into account both the imminence of an election and the three months' cooling off period between the election and jury selection.

Defendant Shields may have the better argument under the latest legal developments in asserting her campaigning rights. The current Supreme Court, speaking through Justice Scalia, said "We have never allowed the government to prohibit candidates from communicating relevant information to voters during an election." *Republican Party of Minnesota v. White*, 536 U.S. 765, 782, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). I take it any restrictive judicial conduct would constitute governmental action, and that I cannot prohibit "campaign oratory" or try to separate the wheat from the chaff in statements made by a candidate.[2]

---

**2.** There are some parallels between this case and the Minnesota case, which struck down

While the Government asks that I direct all counsel to comply with Local Rule 99.7, that would not supply much guidance, and would surely create constitutional problems if applied to Ms. Shields at this time.

Turning to the issue actually presented by motion, I believe I do have authority to release the parties from their confidentiality agreement but should not release discovery wholesale in this situation. Such a release would impact on the rights of co-defendants. The reply brief backs away from the unlimited request, but still seeks documents supplied under a condition of non-disclosure. In civil litigation the public filing and disclosure of discovery documents is not routinely required, but can be ordered by the court. Local Rule 26.4. Litigants in highly publicized civil cases have comparable interest in non-disclosure of sensitive information, and the court has the same interest in not exposing potential jurors to information that may create pre-trial bias. But in civil cases judicial disclosure is clearly discretionary. Rule 99.7 relates to pre-trial publicity in criminal cases, and allows for "special orders" in widely publicized or sensational cases. Such special orders are typically designed to help keep jurors and potential jurors uninformed about material that may create bias, but I am satisfied that judges have authority to allow disclosures of discovery material that may help maintain fairness and balance in pending cases, and of course can act to protect and advance other constitutional rights.

Release of a flood of documents in this case would add nothing to the detailed description of the Government's case in the original press release, as supplemented by the press conference held by the United States Attorney when the indictment was handed down. I understand from those materials that the signing of the settlement agreement at closing was the only action of Ms. Shields currently challenged by the Government as allegedly fraudulent. The Shields motion contends that the other evidence supplied in discovery makes no mention of her. This is consistent with what was said in the press release and the press conference. The Government briefing this week did not take advantage of the opportunity to specify that Ms. Shields had a greater role than signing one document. Nothing more is asserted, and disclosure of all documents would add nothing to public information in advance of the election.

The original motion for disclosure of all the Government's discovery material (Doc. 52) is therefore DENIED. The more limited request advanced in the reply brief (Doc. 58) is also DENIED as inadequately supported to overcome the agreement for confidentiality.[3] I do recognize that what defendant describes as "the incomplete closing statement sent by Zwego to the mortgage lender" could arguably have special significance, and the parties are directed to submit any such document *in camera* to Magistrate Judge Maughmer so that he can give any further directions, consistent with this ruling, that he deems appropriate. SO ORDERED.

---

limitations of judicial ethics relating to campaigning, holding that such rules could not be enforced against the First Amendment rights of the candidates for judicial election. Professional ethical rules have also been struck down in lawyer advertising cases. Even if my preferences are somewhat old-fashioned, and would be on the side of traditional professional limitations I am bound to accept direction from appellate authority.

**3.** If either side believes there is likely public interest in the full text of the settlement agreement, I approve immediate public release of copies in their possession, without further comment by the attorneys for the parties.